**UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF COLORADO**

Bankruptcy Judge Sid Brooks

| | |
|---|---|
| In re ) | |
| RICKY DONOVAN VAN VLEET ) | Case No. 06-17238 SBB |
| d/b/a FIRST FINANCIAL CENTRE, INC. ) | |
| SSN: XXX-XX-9158 ) | Chapter 11 |
| Debtor. ) | |

**MEMORANDUM OPINION AND ORDER
REGARDING MOTION TO APPROVE AND COMPEL PAYMENT OF POST-
PETITION OBLIGATIONS UNDER LEASE OF NONRESIDENTIAL REAL
PROPERTY PURSUANT TO 11 U.S.C. 365(d)(3)**

**APPEARANCES:**

| | |
|---|---|
| Douglas W. Jessop, Esq. | Daniel W. Alexander, Esq. |
| K. Lane Cutler, Esq. | 125 South Howes Street, Suite 401 |
| Jessop & Company, P.C. | Fort Collins, Colorado 80521 |
| 303 East 17th Avenue, Suite 930 | COUNSEL FOR CREDITOR |
| Denver, CO 80203 | BISETTI'S HOLDINGS, INC. |
| COUNSEL FOR TOM H. CONNOLLY, TRUSTEE | |

**I.      Introduction**

This matter came before the Court regarding the Motion to Approve and Compel Payment of Post-Petition Obligations Under Lease of Nonresidential Real Property Pursuant to 11 U.S.C. 365(d)(3) filed on behalf of Bisetti's Holdings, Inc. ("Bisetti's Holdings") on July 31, 2007 (Docket #503). An Objection thereto was filed on behalf of Tom H. Connolly, the duly appointed trustee in this case ("Tom Connolly" or "Trustee"), on August 31, 2007 (Docket #534). Bisetti's Holdings filed a Reply to the Objection on November 6, 2007 (Docket #590). A Memorandum of Points and Authorities was also submitted on behalf of the Trustee on December 18, 2007 (Docket #655).

An evidentiary hearing was conducted on December 19, 2007. Mr. Robert Bisetti, the principal of Bisetti's Holdings, and the Trustee testified during the evidentiary hearing. All exhibits offered by Bisetti's Holdings and the Trustee were admitted into evidence by stipulation, subject to certain limitations as to their purpose, as more fully stated on the record in open court. The Court also received arguments by respective counsel. Having duly considered the foregoing, the Court makes the following determinations.

## II. Summary

Bisetti's Holdings, an owner of nonresidential real property, seeks an Order under 11 U.S.C. § 365(d)(3) requiring the Trustee to pay postpetition rent and damages, alleging that the debtor in possession, Ricky Donovan Van Vleet ("Debtor" or "Mr. Van Vleet") occupied the nonresidential real property owned by Bisetti's Holdings postpetition as a holdover tenant after the expiration of a commercial lease. The successor Chapter 11 trustee, Tom Connolly, (1) disputes that Debtor occupied the property postpetition as a debtor in possession; (2) argues that § 365(d)(3) does not apply because the lease expired on its terms prepetition and Debtor had no rights to assume or assign under § 365(d); (3) in the alternative, argues for retroactive rejection of the lease; and (4) in the alternative, argues that the amount sought by Bisetti's Holdings for rent and damages should be reduced.

Presented to the Court is this central question: Is a business with a lease for commercial property—which *lease term expired under the terms of the lease prepetition,* and which business subsequently filed for Chapter 11 relief and which remained as a debtor in possession tenant post-petition—a tenant under the month-to-month default provisions of the lease and, thus, liable for post-petition rent? The Court concludes that the debtor in possession is and remains a tenant under the month-to-month tenancy provisions and owes the post-petition rent as a cost of administration.

## III. Findings of Fact

The Court finds that the following facts were either undisputed, uncontroverted, or supported by the weight of the evidence presented:

In an agreement made effective as of May 1, 2003, Bisetti's Holdings, as landlord, and, Debtor, as tenant, became parties to a nonresidential commercial lease ("Commercial Lease") pursuant to which Debtor leased office space located at 1024 Centre Avenue, Building E, Suite 100, Fort Collins, Colorado ("Leased Premises").[1]

The Commercial Lease was executed by Debtor in his individual capacity, and a personal guarantee ("Personal Guarantee") was also executed by Debtor in his individual capacity. The Personal Guarantee was executed because it was a matter of Bisetti's Holdings routine office procedures. Moreover, it was executed to insure that Debtor remained personally obligated in the event of any future assignment or subletting of the Commercial Lease.

At the time the Commercial Lease was executed, Debtor already occupied the Leased Premises and used it to operate various businesses, some evidently incorporated and some evidently as a sole proprietor.

---

[1] A complete and accurate copy of this Commercial Lease was admitted into evidence as Bisetti's Holdings' Exhibit No. 1.

One such business, First Financial Centre, Inc (also referred to herein as "FFC, Inc.")—as separate and distinct from a personal d/b/a under which Van Vleet sometimes conducted some of his businesses—was one of Debtor's businesses. The name on the leased building occupied by the Debtor and his related businesses was known as First Financial Centre.

At the time the Commercial Lease was executed, Bisetti's Holdings was aware that Debtor was using the Leased Premises to operate various businesses and, not wanting to sort out the various businesses or encounter arguments as to who was obligated as the tenant, purposely required that Debtor execute the Commercial Lease and Personal Guarantee in his individual capacity.

The Commercial Lease contained various provisions of importance, including many that are typically used in non-residential real property leases. The more notable of such provisions included the following:

a. An "integration" or "merger" clause providing that the Commercial Lease set forth the entire agreement of the parties and that the Commercial Lease could not be amended or modified except by written agreement.[2]

b. Rent was composed of a base rent, plus a pro rata share of the operating expenses common to the building of which the Lease Premises was a part.[3]

c. The initial term of the Commercial Lease was for a period of three years commencing on July 1, 2003.[4]

d. Upon expiration of the Commercial Lease, Debtor was to surrender the Lease Premises.[5]

e. If, upon expiration of the Commercial Lease, Debtor remained in possession with Bisetti's Holdings consent, then a month-to-month tenancy would arise, which tenancy would be governed by all the terms and conditions of the Commercial Lease except that relating to its term.[6]

---

[2] *See* Section 42 of Commercial Lease.

[3] *See* Section 3A of Commercial Lease.

[4] *See* Section 2 of Commercial Lease.

[5] *See* Section 37 of Commercial Lease.

[6] *See* Section 38 of Commercial Lease.

    f.    If a month-to-month tenancy arose under the Commercial Lease, it was terminable by either party upon thirty days written notice.[7]

    g.    A requirement that Debtor first request consent in writing, and then obtain Bisetti's Holdings consent in writing, before there could be any assignment of Debtor's interest in the Commercial Lease.[8]

    h.    Rent not paid when due was subject to a 10% late charge.[9]

    i.    Interest on rent not paid when due was to accrue interest "at the maximum rate an individual is permitted by law to charge."

    j.    Debtor would be liable for all reasonable attorney's fees and related expenses incurred by Bisetti's Holdings in securing collection of rent or other amounts due under the Commercial Lease.

Following the expiration of the initial three year term of the Commercial Lease on June 30, 2006, Debtor did not surrender the Leased Premises to Bisetti's Holdings, but rather continued to occupy and use the Lease Premises with the tacit consent of Bisetti's Holdings.

Since, at least, October 2005, and apparently for some period prior thereto, rent under the Commercial Lease had been paid through checks drawn by "First Financial Centre, Inc." The corporation controlled and owned by Debtor, but which nevertheless constituted an entity separate from Debtor.[10]

During the relevant time period, the base rent and pro rata share of the operating expenses due each month under the Commercial Lease totaled $4,088.50 ("Monthly Rent"). Through July 2006, the month of the expiration of the three year term of the lease, payment of the Monthly Rent due under the Commercial Lease was substantially current. Payment of the Monthly Rent was not timely made in August, September and October of 2007.

On October 11, 2006, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code. Debtor continued to occupy the Leased Premises after the filing of the Chapter 11 case, out of which he apparently continued to operate his various businesses post-petition.

---

[7]    *See* Sections 34 and 38 of Commercial Lease.

[8]    *See* Sections 21 and 34 of Commercial Lease.

[9]    *See* Section 26 of Commercial Lease.

[10]    Copies of these checks were admitted collectively into evidence as Bisetti's Holdings' Exhibit No. 2.

The debtor in possession, Mr. Van Vleet, *did not* notify Bisetti's Holdings that he had filed Chapter 11 bankruptcy *nor* did he timely list Bisetti's Holdings as a creditor in the bankruptcy case.

Despite Mr. Van Vleet's failure to make the August, September and October rent payments, Bisetti's Holdings did not act to terminate the lease or file an eviction action to secure possession of the premises or seek damages.

On November 16, 2006, Bisetti's Holdings received a check drawn by "First Financial Centre, Inc." in the amount of $6,000.00, which it applied to payment in full of the Monthly Rent due under the Commercial Lease for August of 2006, and as partial payment of the Monthly Rent due for September of 2006. This was, and to this point remains, the final payment made to Bisetti's Holdings under the Commercial Lease.

In correspondence from its counsel to the debtor in possession, Mr. Van Vleet, dated January 15, 2007, Bisetti's Holdings demanded payment of Monthly Rent due under the Commercial Lease.[11] In apparent response to the correspondence forwarded by Bisetti's Holdings' counsel dated January 15, 2007, Debtor physically vacated the Lease Premises on or about January 31, 2007. Debtor did not provide the thirty days written notice required under the Commercial Lease in order to terminate his month-to-month tenancy thereunder.

At no time during either the initial three year term of the Commercial Lease or the month-to-month tenancy which arose thereafter did Debtor ever request, either in writing or verbally, that Bisetti's Holdings consent to an assignment of his interest in the Commercial Lease.

At no time during either the initial three year term of the Commercial Lease or the month-to-month tenancy which arose thereafter did Bisetti's Holdings ever give, either in writing or verbally, its consent to an assignment of Debtor's interest in the Commercial Lease.

On January 24, 2007, Tom H. Connolly was appointed to serve as the Trustee in this case. Bisetti's Holdings first became aware of Debtor's bankruptcy in April of 2007. The Trustee first became aware of Bisetti's Holdings claim for amounts due under the Commercial Lease as a result of Bisetti's Holdings filing, on July 31, 2007, of the Motion which is the subject of this Memorandum Opinion and Order. At no time was a Motion to Reject the Commercial Lease or a Motion to Assume ever filed by Debtor or the Trustee.

Bisetti's Holdings has incurred attorney's fees and related expenses attempting to collect the amounts it claims are owing under the Commercial Lease.

---

[11] A copy of this correspondence was admitted into evidence as Bisetti's Holdings' Exhibit No. 3.

**IV.     Applicable Law**

The statutory provisions on this issue are clear. 11 U.S.C. § 365(d)(3) provides in relevant part that "[t]he trustee *shall* perform all the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected *notwithstanding* section 503(b)(1) of this title."[12]

A bankruptcy court's power to relieve a trustee or a debtor in possession from these obligations is limited to giving such a trustee an extension of time to pay during the first sixty (60) days after the Order for Relief.[13] Further, the obligations which a trustee is required to perform under 11 U.S.C. 365(d)(3) are not restricted to only the payment of rent, but also includes the payment of late fees, interest, and attorney's fees if provided for under the lease.[14] Rather, the lease itself generally controls the use and occupancy obligations of a trustee when the property leased is nonresidential real property.[15] Finally, in the absence of the filing of a motion seeking rejection, an unexpired lease of nonresidential real property under which a debtor is the lessee shall be deemed rejected upon the earlier of the date that is 120 days after the order for relief or the date of an order confirming a plan.[16]

**V.     Analysis**

    **A.     Issues**

There are two issues before the Court:

1.  Whether Debtor was a party to a lease of nonresidential real property that expired on the filing date of his Voluntary Petition, and, if he was, whether the landlord, Bisetti's Holdings, is entitled to the protections and rights afforded to lessors by 11 U.S.C. § 365(d)(3).

2.  Whether Bisetti's Holdings is entitled to payment of the amounts being claimed as priority costs of administration of the estate under 11 U.S.C. § 503.

---

[12] Emphasis added.

[13] *See* 11 U.S.C. 365(d)(3); *see also In re Buyer's Club Markets, Inc.,* 115 B.R. 700 (Bankr.D.Colo. 1990).

[14] *See In re Geonex Corp.*, 258 B.R. 336 (Bankr. D.Md. 2001).

[15] *See In re Twigland Fashions, Inc.*, 198 B.R. 199 (W.D.Tex. 1996).

[16] *See* 11 U.S.C. 365(d)(4).

**B.     Burden of Proof**

Burden of proof, here, is by a preponderance of the evidence standard.[17]  In this context, that burden is on Bisetti's Holdings.[18]

**C.     On the Date of Filing the Voluntary Petition Was the Debtor a Party to an Unexpired Lease?**

1.     <u>The Elements to Consider</u>

There are two elements to consider in determining whether Debtor was a party to an unexpired lease of nonresidential real property at the time his Voluntary Petition was filed:

a.     Whether the Commercial Lease was expired at the time Debtor's Petition for Voluntary Relief was filed.

b.     Assuming the Commercial Lease had not expired, whether Debtor was a tenant under the Commercial Lease.

2.     <u>The Commercial Lease Was Not Expired at the Time the Debtor/Tenant filed for Relief Under Chapter 11</u>

The Trustee argues that, under the plain language of the Commercial Lease, the term of the lease was for three years commencing July 1, 2003, and therefore expired on June 30, 2006, about three months prior to the time Debtor filed his Voluntary Petition.  The Trustee's reasoning being that, because the Commercial Lease's three year initial term had expired prior to the filing of Debtor's Voluntary Petition, 11 U.S.C. § 365(d)(3) is, by definition, not applicable and thus cannot serve as a basis for granting the relief requested by Bisetti's Holdings.

The Trustee's argument fails to take into account the plain language contained in Section 38 of the Commercial Lease.  This Section specifically provides that if the tenant remains in possession following the expiration of the Commercial Lease's initial three year term with the landlord's consent, a month-to-month tenancy results which, except for the term being on a month-to-month basis rather than for a period of three years, has exactly the same terms as the Commercial Lease. This was the case here.

---

[17]     *In re JS Marketing and Communications, Inc.,* ___ B.R. ___, 2008 WL 219970, at *5 (Bankr. D.Mt. 2008).  It would appear, however, that 11 U.S.C. § 365 (d)(3) sets up a statutory presumption that any hold-over tenancy of a nonresidential leasehold is a necessary cost of preserving the estate.  *In re Woods Farmers Co-op. Elevator Co.,* 107 B.R. 694, 697 (Bankr. D.N.D. 1989).

[18]     *See Id., but see, In re Numedco, Inc.,* 1990 WL 25632, * 1(Bankr. E.D.Pa. 1991) (the court noted that the relative burdens of proof on the issue of payments of any amounts of rent due from a debtor-tenant to a landlord where considerable time has passed before the landlord seeks relief is open to dispute).

It is not disputed that there was no surrender of the Leased Premises to Bisetti's Holdings upon the expiration of the Commercial Lease's initial three year term as required under Section 37 of the Commercial Lease. Rather, the tenancy continued by Debtor for almost four months post-petition.

It is further undisputed by the parties that Bisetti's Holdings consented to this arrangement. In other words, the precise conditions contemplated under Section 38 of the Commercial Lease that would give rise to a month-to-month tenancy otherwise having the same terms as the Commercial Lease existed in the present case. In sum, as of the date on which Debtor filed his Voluntary Petition, the lease of nonresidential real property had not expired. This Court concludes that, other than being on a month-to-month basis, the Commercial Lease continued to have exactly the same terms. Consequently, the Commercial Lease, as modified by its terms to constitute a month-to-month tenancy, is governed by the provisions set forth in 11 U.S.C. § 365(d)(3).

In arriving at this conclusion, the Court has considered, and rejected, the Trustee's argument first raised in his Memorandum of Points and Authorities that a "holdover" tenancy can never constitute an unexpired lease within the meaning of 11 U.S.C. §365(d)(3), and has further considered and rejected the Trustee's argument first raised in his Closing Argument that a "month-to-month" tenancy can never constitute an unexpired lease within the meaning of 11 U.S.C. § 365(d)(3).

In support of the Trustee's argument that a "holdover" tenancy can never constitute an unexpired lease within the meaning of 11 U.S.C. § 365(d)(3), the Trustee cites two cases: *In re W.A.S. Food Service Corp.*[19] and *In re RRS, Inc.*[20] While it may be that these cases, as well as the Commercial Lease, use the term "holdover," both *In re W.A.S. Food Service Corp.* and *In re RRS, Inc.* are, in good measure, distinguishable from the case now before the Court.

Both *In re W.A.S. Food Service Corp.* and *In re RRS, Inc.* involved tenants whose rights *had been legally terminated pre-petition*, the former by the issuance of a Warrant of Eviction and the latter by the entry of Judgment for Possession, but which nevertheless retained physical possession of the property. The courts reasoned in these cases that, since the respective tenancies had been terminated by formal legal process prior to the filing of the bankruptcies, there was quite simply no unexpired lease to which the protections of the Bankruptcy Code could apply. There is no question that, in the context of these cases, this reasoning is sound. However, there is also little question that this reasoning is not applicable to the present case.

In contrast to the factual context present in both *In re W.A.S. Food Service Corp.* and *In re RRS, Inc.*, the present case involves a contractual relationship (i.e. a term tenancy, which devolved into a month-to-month tenancy) between Debtor and Bisetti's Holdings which arose

---

[19] 49 B.R. 969 (Bankr. S.D.N.Y. 1985).

[20] 7 B.R. 870 (Bankr. M.D.Fla. 1980).

from a provision in the Commercial Lease—Section 38—which specifically provided for the existence of an ongoing landlord-tenant relationship. When Debtor's Voluntary Petition was filed, there had been absolutely no attempts, whether through formal legal process or otherwise, to terminate the tenancy created under Section 38 of the Commercial Lease.

In sum, while the debtors in both *In re W.A.S. Food Service Corp.* and *In re RRS, Inc.* may have physically occupied the properties on which they had in the past been tenants, their legal right to do so had been terminated by legal process prior to the filing of their bankruptcy cases. This is significantly different from the factual context in the present case where, not only did Debtor physically occupy the Leased Premises when his bankruptcy case was filed, but he also had the legal right to do so under the Commercial Lease. There had been no termination of this right prior to or after the filing of the bankruptcy.

The Court is similarly unpersuaded by the Trustee's unsupported assertion that a month-to-month tenancy can never constitute an unexpired lease within the meaning of 11 U.S.C. § 365(d)(3).[21] A month-to-month tenancy is nothing more than a "periodic tenancy", a type of tenancy which has long been recognized as a valid tenancy under the laws of Colorado.[22]

Further, a month-to-month tenancy does not, as the Trustee argued, expire every month, but rather continues until terminated by either the requisite notice or the pursuit of legal proceedings, neither of which occurred in the present case. In sum, month-to-month tenancies are clearly recognized as periodic tenancies under Colorado law and there is nothing in the language set forth in 11 U.S.C. § 365(d)(3) to indicate that its protections are inapplicable to periodic tenancies or otherwise dependent upon the length of a periodic tenancy.

---

[21] *In re Woods Farmers Co-op. Elevator Co.,* 107 B.R. 694, 697 (Bankr. D.N.D. 1989). In *Woods Farmers*, the court allowed the administrative claim of a holdover tenant in a grain storage facility. The court held:

> Section 365(d) requires a Chapter 7 trustee to assume or reject an executory contract or unexpired lease of real property within sixty days of the order for relief. If nothing is done within this time the contract/lease is deemed rejected. In the context of unexpired leases, the Code as amended in 1984 mandates the continued payment of full rent due under the lease for the sixty-day period even though it is ultimately rejected by default, section 503(b)(1) notwithstanding. 11 U.S.C. section 365(d)(3). *This section sets up a statutory presumption that any holdover of a nonresidential leasehold is a necessary cost of preserving the estate.*

*Id.* (emphasis added).

[22] *See, First Interstate Bank v. Tanktech, Inc.,* 864 P.2d 116, 120 (Colo. 1993) (*en banc*).

### 3. The Debtor Was the Tenant Under the Unexpired Commercial Lease

This Court, having concluded that the Commercial Lease was "unexpired" at the time of Debtor's Chapter 11 bankruptcy filing, must now consider whether Debtor was a tenant under the unexpired Commercial Lease.

The weight of the evidence supports a finding that Debtor was, at least, the initial tenant under the Commercial Lease. The evidence demonstrates that Debtor executed the Commercial Lease in his *individual capacity*. Moreover, Mr. Bisseti testified that it was his specific intention that Debtor do so. Evidence was also presented that Debtor operated several businesses out of the Leased Premises, both individually and on behalf of, it appears, a good number of corporations or other business entities. Thus, a factual issue of some importance becomes the question of whether Debtor assigned his interest in the Commercial Lease; the legal effect of which could be to remove him as a party to the Commercial Lease.

The evidence supporting an assertion that an assignment of the Commercial Lease occurred is twofold. First, Debtor's Schedule G does not list Debtor as being a party to the Commercial Lease. Second, rental payments were made through checks drawn by FFC, Inc. The Court does not find this ostensible evidence of an assignment to be persuasive.

The fact that Debtor's Schedule G does not reflect the Commercial Lease as being an unexpired lease to which he was a party is neither controlling nor persuasive. It has been demonstrated that Debtor's Statements and Schedules have not been accurate or complete. The United States Trustee, by his Motion to Appoint a Chapter 11 Trustee Should the Court Decline to Convert or Dismiss Case on His Prior Motion to Convert or Dismiss filed on December 15, 2006, in paragraph 8, asserted that "[t]he Debtor's Statement of Financial Affairs and Schedules are woefully inadequate in this case."[23] These inaccuracies in Debtor's Statements and Schedules were one of the bases for the stipulation to appoint a Chapter 11 Trustee, filed on January 3, 2007 (Docket #89) and the Agreed Order and Consent to Appoint Chapter 11 Trustee entered on January 4, 2007 (Docket # 126).[24]

Further, the fact that rental payments under the Commercial Lease were paid by checks drawn by FFC, Inc. is neither determinative, nor in the Court's view, persuasive. Payment of rent, alone, does not constitute an assignment. The uncontroverted, and undisputed, evidence was that Debtor operated several businesses out of the Leased Premises, both individually and through corporations. It was with this knowledge that Bisetti's Holdings required that Debtor execute the Commercial Lease in his individual capacity. It was of no concern to Bisetti's Holdings from

---

[23] Docket # 89.

[24] Indeed, counsel for the Trustee and Bisetti's Holdings indicated at the hearing that, had they considered Debtor to be a credible witness on this issue, they would have subpoenaed him to appear and testify at the hearing on this matter.

where the rent was paid, or what manner of internal accounting may have been taking place between Debtor and FFC, Inc. Contrast this evidence with the following:

1. The Commercial Lease, and specifically Section 42, contained an "integration," or "merger," clause providing that the Commercial Lease set forth the entire agreement of the parties and that it could not be amended or modified except by written agreement. There was absolutely no evidence introduced that the Commercial Lease had been amended or modified, whether in writing or otherwise.

2. Sections 21 and 34 of the Commercial Lease required that Debtor first request consent in writing, and then obtain Bisetti's Holdings' consent in writing, before there could be any assignment of Debtor's interest in the Commercial Lease.

3. It is uncontroverted, and seemingly undisputed, that at no time during either the initial three year term of the Commercial Lease or the month-to-month tenancy which arose thereafter did Debtor ever request, either in writing or verbally, that Bisetti's Holdings consent to an assignment of his interest in the Commercial Lease.

4. It is uncontroverted, and seemingly undisputed, that at no time during either the initial three year term of the Commercial Lease or the month-to-month tenancy which arose thereafter did Bisetti's Holdings ever give, either in writing or verbally, its consent to an assignment of Debtor's interest in the Commercial Lease.

The evidence establishes that Debtor's interest in the Commercial Lease was *not* assigned in accordance with the requirements set forth in the Commercial Lease.

The Court finds this to be far more persuasive than the fact that at least some payments under the Commercial Lease were made by checks drawn by FFC, Inc. Further, it must be emphasized that, even if one were to assume there had been an assignment of the Commercial Lease (which the Court is finding did *not* occur), this, in itself, is not sufficient to constitute a valid assignment, which would have removed Debtor as a party to the Commercial Lease.

As previously discussed, Debtor was the initial party to the Commercial Lease, and it is equally clear that Debtor also executed a Personal Guarantee of the obligations under the Commercial Lease. Bisetti's Holdings' uncontroverted testimony was that, besides being a matter of routine office procedure, the Personal Guarantee was required to be executed by Debtor in order to insure that Debtor remained personally obligated in the event of any future assignment of his rights under the Commercial Lease. Given this, the present case is substantially identical to the circumstances presented in *In re Farley Incorporated.*[25]

---

[25] 152 B.R. 516 (Bankr. N.D.Illinois 1993).

In *Farley*, the debtor was an original tenant under an unexpired lease of nonresidential real property, a fact which the court noted was required in order for 11 U.S.C. § 365(d)(3) because its protections were not available to mere guarantors.[26] The debtor, in *Farley,* then assigned its interest in an unexpired lease, but the written assignment agreed to by the landlord specifically provided that the debtor would remain "bound and liable under all the terms and conditions" of the lease. The court in *Farley* held that, because the debtor remained bound by the terms and conditions of the lease, the assignment did not constitute a complete assignment and, as a result, the debtor remained a lessee under the lease.[27] Consequently, the provisions set forth in 11 U.S.C. § 365(d)(3) were specifically found to apply.[28]

In the present case, as in *Farley*, Debtor was an original tenant under the Commercial Lease and not a mere guarantor. Also, through his execution of the Personal Guarantee, Debtor agreed to remain bound by the terms of the Commercial Lease despite whether there may be any future assignment of his rights thereunder. Specifically, the second paragraph of the Personal Guarantee executed by Debtor provided that he ". . . for himself and his successors and assigns, hereby unconditionally guarantees to Landlord . . . payment in full of all indebtedness and obligations of Tenant . . . [and] the performance of all of Tenant's obligations under such Lease." This language is legally equivalent to that found in *Farley* and, thus, the logic of the court in *Farley* is equally applicable to the present case.

The holding in *Farley* is that 11 U.S.C. § 365(d)(3) applies in cases where a debtor was a tenant under an unexpired lease of nonresidential real property who remained liable despite an assignment of its rights under such an unexpired lease. Thus, even assuming this Court found that Debtor had assigned his interest under the Commercial Lease based upon the fact that rental payments were made through checks drawn by FFC, Inc., which as previously stated is not the case, Bisetti's Holdings would nonetheless have been entitled to the protections afforded by 11 U.S.C. § 365(d)(3) given the language of the Personal Guarantee executed by Debtor.

### D. Claim Calculation

#### 1. Summary

The Trustee also argues that, assuming the Commercial Lease constituted an unexpired lease of nonresidential real property to which Debtor was a party at the time his Voluntary Petition was filed, and thus subject to the provisions set forth in 11 U.S.C. § 365(d)(3), the amounts being claimed by Bisetti's Holdings should be reduced for a variety reasons. Having already determined that the Commercial Lease is subject to the provisions set forth in 11 U.S.C. §

---

[26] *Id.* at 524.

[27] *Id.* at 525.

[28] *Id.* at 527.

365(d)(3), the Court must address the Trustee's arguments as to a reduction of the claimed amount.

2.   Retroactive Rejection.

The Trustee first argues that the equities in this case require retroactive rejection of the Commercial Lease. Specifically, the Trustee asserts that, because he was not informed, nor aware, of the existence of the Commercial Lease, retroactive rejection is appropriate. As authority for the Court's power to engage in retroactive rejection, the Trustee cites the case *In re CCI Wireless, LLC*.[29] The Trustee's reliance upon *CCI Wireless* is misplaced.

*CCI Wireless* stands for the proposition that when the principles of equity so require, a court may approve the rejection of a nonresidential lease pursuant to 11 U.S.C. § 365(d) *retroactive to the filing date of the motion seeking rejection;* it does *not* purport to give a court the authority to approve retroactive rejection where no motion to do so has been filed. Indeed, were this Court to do as the Trustee requests, it would completely abrogate the statutory requirements set forth in 11 U.S.C. § 365(d)(3), an act which the Court is clearly without the authority to undertake.

Even assuming otherwise, the equities in this case would not justify retroactive rejection considering that it is undisputed that the Leased Premises remained occupied by the debtor in possession for nearly the entire 120-day period following the filing of Debtor's bankruptcy. Also, it is worth noting that the Trustee stepped into the shoes of Debtor and, as a result, it is Debtor's undisputed knowledge of the existence of the Commercial Lease, and not that of the Trustee, which is relevant in this case.

3.   Damages

Although this Court concludes that the Commercial Lease is a binding obligation of the Debtor, the Court concludes that Bisetti's Holdings is not entitled to the full amount of damages

---

[29] 279 B.R. 590 (Bankr. D.Colo. 2002), *motion to amend denied,* 281 B.R. 319 (Bankr.D.Colo. 2002), *rev'd,* 297 B.R. 133 (D.Colo. 2003). The parties did not fully address the procedural history of the *CCI Wireless* case in their briefs and proposed findings and conclusions submitted to this Court after the hearing on this matter. In *CCI Wireless*, the Chapter 11 debtor moved to reject unexpired commercial leases and the landlord moved to compel payment of rent under the commercial leases. This Court, in *CCI Wireless*, denied the landlord's motion to compel, but granted the debtor's motion to reject leases retroactively to the date that the motion to reject the lease was filed. The lessors later moved to alter or amend the *CCI Wireless* judgment to require the debtor to pay post-petition rent, but this Court denied that request.

On appeal before the District Court of Colorado, the District Court held that the bankruptcy court had the authority to make the debtor's rejection of its leases retroactive to the date of the filing of the motion to reject and that a *nunc pro* tunc order doing so was not an abuse of discretion. Thus, this Court's original decision in *CCI Wireless* was affirmed. The District Court, however, reversed certain findings by this Court on the denial of the motion to alter or amend the judgment to the extent that this Court found that the lessors had to demonstrate a benefit to the estate to prevail on the motion to compel the debtor to pay post-petition rent.

sought. Bisseti's Holdings seeks payment of rent for the 120-day period after the petition date, plus late fees, interest at 45%, and attorney's fees.

        a.   October 2006 Rent

  The Court concludes that Bisetti's Holdings' argument with respect to the October 2006 rent is the correct application of the current law. The Trustee argues that, rather than pro rata rent for the month of October 2006, as Bisetti's Holdings is requesting, the entire rent due for the month of October of 2006 should be treated as a pre-petition claim because this rent payment was due on October 1, 2006, which is prior to the filing of Debtor's bankruptcy. In support of this assertion, the Trustee again cites to the case *In re CCI Wireless, LLC*.[30]

  While this Court, in *CCI Wireless, LLC,* did adopt the "performance date rule" rather than the "proration rule" being requested by Bisetti's Holdings, the Trustee's assertion fails to take into account the case of *In re Furr's Supermarkets, Inc.*,[31] a decision issued by the Tenth Circuit Bankruptcy Appellate Panel subsequent to *CCI Wireless, LLC,* wherein the Tenth Circuit specifically approved of the "proration rule" and rejected the "performance date rule."

  Under the "performance date rule," lessors are entitled to lease payments under 11 U.S.C. § 365(d)(3) for any payment that becomes due under the lease after the order for relief, even if the lease payments due are attributable to periods prior to the order for relief.[32] Utilizing the "proration rule" the lessors are entitled to lease payments under 11 U.S.C. § 365(d)(3) arising during and attributable to the period after the order for relief. Under the "proration rule," rent, taxes and other payments coming due under the lease after the order for relief are prorated between the prepetition and postpetition period. The Trustee is required only to pay those amounts that accrue after the order for relief.[33]

  Further, even assuming that application of the "performance date rule" were proper, and that by doing so the rent and late fees due under the Commercial Lease for October 2006 would be considered pre-petition obligations, the logic of the "performance date rule" would, in turn, dictate that the entire amount of rent and late fees due on the first of February 2007 be treated as post-petition obligations, the net result of which would be that the amount being requested by Bisetti's Holdings would be exactly the same regardless of whether the "proration rule" or "performance date rule" were utilized.

  In calculating the postpetition versus the prepetition application of the rent, the Court takes the total amount of rent due, or $4,088.50, divided by 31. Thus, the per diem rate of rent is

---

[30]  *Id.*

[31]  283 B.R. 60 (10th Cir.BAP 2002)

[32]  *Id.* at 67.

[33]  *Id.* at 66.

$131.87. The bankruptcy petition was filed on October 11, 2006. The rent due postpetition would be $2,637.42 ($131.87 x 20 days). Prepetition rent for October 2006 would be $1,451.08. The Court concludes that the $6,000.00 paid postpetition by FFC Inc. should be applied to reduce Mr. Van Vleet's postpetition rent obligation. Therefore, the entire amount due postpetition for October 2006, or $2,637.42, will be deducted from that $6,000.00 payment and be deemed paid. The Trustee, on behalf of the estate, has no obligation to pay additional rent for October 2006.

                b.        <u>November 2006 Rent</u>

The rent owed for the month of November 2006 was $4,088.50. The Court concludes that the remainder of the $6,000.00 postpetition payment by FFC, Inc., or $3,362.68, should be applied to reduce Mr. Van Vleet's postpetition rent obligation for November 2006. Therefore, the balance remaining for November 2006 rent, or $725.92, is an obligation to be paid by the Trustee on behalf of the estate.

                c.        <u>December 2006 Rent</u>

The Trustee, on behalf of the estate, is obligated to pay $4,088.50 for December 2006 rent.

                d.        <u>January 2007 Rent</u>

The Trustee, on behalf of the estate, is obligated to pay $4,088.50 for January 2007 rent.

                e.        <u>February 2007 Rent</u>

Bisetti's Holdings acknowledges that it obtained possession of the Property on January 31, 2007. The Court finds that the estate is not liable for any rent due after that date.

                f.        <u>Late Fees, Interest, and Attorney's Fees</u>

The Court narrowly construes the amounts entitled to payment under Section 365(d)(3), because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors.[34] Section 365(d)(3) does not, by its terms, provide for the assessment of late fees, interest, or attorney's fees. Such punitive measures are especially inappropriate as applied to an innocent Trustee, and would disproportionately reduce the recoveries to Mr. Van Vleet's innocent creditors. Additionally, a 45% interest rate is an unenforceable penalty that would harm the estate's creditors, and will not be imposed.[35] The Court therefore declines to award late fees, interest, or attorney's fees.

---

[34]     *Isaac v. Temex Energy, Inc. ( In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir. 1988).

[35]     *See In re Hollstrom*, 133 B.R. 535 (Bankr. D. Colo. 1991).

**VI.** **Conclusion**

Accordingly, for the reasons set forth above,

IT IS HEREBY ORDERED that the Motion is DENIED, in part, and GRANTED, in part. The Trustee, on behalf of the estate, is obligated to pay no more than $8,902.92 (October 2006 rent of $2,637.42, November 2006 rent of $4,088.50, December 2006 rent of $4,088.50 plus January 2007 rent of $4,088.50, less the $6,000.00 payment made postpetition by FFC, Inc.) to Bisetti's Holdings, such payment to be made pursuant to any Plan confirmed in this case.

Dated this 12th day of March, 2008.

BY THE COURT:

_____
Sidney B. Brooks,
United States Bankruptcy Judge